No. 22-1294

In The United States Court of Appeals
For The Tenth Circuit

**United States of America**,
Plaintiff-Appellee,

v.

**Orlando Vasquez**,
Defendant-Appellant.

---

**Answer Brief of the United States**

---

On Appeal from the United States District Court
for the District of Colorado
The Honorable William J. Martinez
D.C. No. 20-cr-00322-WJM-1

---

Cole Finegan
United States Attorney

Kyle Brenton
Assistant U.S. Attorney
1801 California Street
Suite 1600
Denver, Colorado  80202
(303) 454-0100

Attorneys for Plaintiff-Appellee
United States of America

**ORAL ARGUMENT NOT REQUESTED**

June 29, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF RELATED CASES ................................................... v

JURISDICTIONAL STATEMENT ...................................................... vi

STATEMENT OF THE ISSUE ........................................................... 1

STATEMENT OF THE CASE ............................................................ 2

    1. Officers observe a car with expired tags make a right
       turn at a red light without coming to a complete stop. .................. 2

    2. The officers try to stop the car, but the driver continues
       driving, turns again, goes past six houses, then pulls
       into an exposed, double-wide driveway between two
       houses ............................................................................. 2

    3. Officers approach the car, and in the course of an
       interaction with the driver, Vasquez, find he has a gun
       and is a felon ..................................................................... 5

    4. Claiming that the officers violated the curtilage of his
       home without a warrant, Vasquez moves to suppress
       the gun and ammunition, the district court denies the
       motion, and Vasquez pleads guilty ........................................ 7

SUMMARY OF ARGUMENT ............................................................ 8

ARGUMENT ................................................................................. 9

    I. The district court correctly concluded that the exposed
      driveway was not part of the curtilage of Vasquez's
      home ................................................................................ 9

        A. Standard of review and preservation ..................................... 10

B. The district court properly used the *Dunn* factors to guide its determination of whether the driveway was part of the curtilage of Vasquez's house. ......................... 11

C. The exposed driveway did not constitute part of the curtilage, and no warrant was thus required for officers to enter it. ............................................... 15

D. Similarly, the portion of the front yard where the officers stood while interacting with Vasquez was not curtilage. ........................................................ 21

II. In the alternative, by leading the police to his home, parking in the exposed driveway, remaining in the car, and rolling the window down, Vasquez implicitly consented to the officers entering the driveway to conduct the stop .................................................. 23

CONCLUSION ................................................................ 25

CERTIFICATE OF COMPLIANCE ................................... 27

CERTIFICATE OF SERVICE ........................................... 28

TABLE OF AUTHORITIES

## Federal Cases

*Collins v. Virginia*,
  138 S.Ct. 1663 (2018) ................................................................. 12, 17, 20

*Florida v. Jardines*,
  569 U.S. 1 (2013) ........................................................................... 10, 13

*Florida v. Jimeno*,
  500 U.S. 248 (1991) ........................................................................ 23, 24

*Lange v. California*,
  141 S.Ct. 2011 (2021) ..................................................................... 24, 25

*Reeves v. Churchich*,
  484 F.3d 1244 (10th Cir. 2007) ......................................................... 14, 21

*United States v. Acosta*,
  965 F.2d 1248 (3d Cir. 1992) ............................................................ 13, 14

*United States v. Alexander*,
  888 F.3d 628 (2d Cir. 2018) ............................................................. 14, 15

*United States v. Carloss*,
  818 F.3d 988 (10th Cir. 2016) ........................................................... 10, 20

*United States v. Coleman*,
  923 F.3d 450 (6th Cir. 2019) ................................................................. 18

*United States v. Cousins*,
  455 F.3d 1116 (10th Cir. 2006) .......................................................... 11, 14

*United States v. Dunn*,
  480 U.S. 294 (1987) .................................... 8, 10, 11, 15, 16, 17, 20,

*United States v. Echeverria*,
  203 F. App'x 936 (10th Cir. 2006) (unpublished) .................................... 19

*United States v. Guerrero*,
  472 F.3d 784 (10th Cir. 2007) ............................................................... 23

*United States v. Jones,*
    893 F.3d 66 (2d Cir. 2018)................................................................18

*United States v. Lopez-Carillo,*
    536 F. App'x 762 (10th Cir. 2013) (unpublished)................................23

*United States v. McDowell,*
    715 F.3d 571 (10th Cir. 2013) ..........................................................14

*United States v. Ortiz,*
    483 F. App'x 712 (3d Cir. 2012) (unpublished) ............................13-14

*United States v. Pena-Ponce,*
    588 F.3d 579 (8th Cir. 2009) .............................................................23

*United States v. Powell,*
    840 F. App'x 316 (10th Cir. 2020) (unpublished)..............................14

*United States v. Stephen,*
    823 F. App'x 751 (11th Cir. 2020) (unpublished)..............................18

*United States v. Swepston,*
    987 F.2d 1510 (10th Cir. 1993) .........................................................14

## Federal Statutes & Rules

18 U.S.C. § 922(g)(1)...........................................................................7

28 U.S.C. § 1291 ................................................................................vi

28 U.S.C. § 3231 ................................................................................vi

U.S. Const. amend. IV.........................................................................9

U.S.S.G. § 5K2.23 ...............................................................................8

## STATEMENT OF RELATED CASES

None.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this criminal proceeding under 28 U.S.C. § 3231. Final judgment was entered on September 15, 2022. I:131.[1] The defendant timely appealed the next day. I:138. This court has jurisdiction under 28 U.S.C. § 1291.

---

[1] This brief cites the record on appeal by volume (in Roman numerals) and page number. The police body camera footage is in Volume IV and will be cited by file name and time stamp.

STATEMENT OF THE ISSUE

Officers observed a driver later identified as Orlando Vasquez, a convicted felon, driving a car with expired tags and making a right turn at a red light without stopping.  When they attempted to pull him over for the traffic violations, Vasquez continued driving.  He turned again, drove past six houses, turned into a double-wide driveway between two houses, parked, and rolled down his window to wait for the officers.  Unbeknownst to the officers, Vasquez lived in one of the houses.  The driveway was fully exposed to the street, the yard was unfenced, and there were no personal items anywhere in view.  As the officers removed Vasquez from the car, he told them he had a handgun.

1.     Did the district court correctly conclude that the exposed double-wide driveway was not part of the curtilage of Vasquez's home, and so the officers did not need a warrant to conduct the stop there?

2.     In the alternative, did Vasquez's conduct during the attempted traffic stop convey his implicit consent for the officers to enter the driveway?

## STATEMENT OF THE CASE

**1.   Officers observe a car with expired tags make a right turn at a red light without coming to a complete stop.**

At midnight on May 23, 2020, two officers of the Greeley Police Department saw a light-colored car with a temporary tag go through a McDonald's drive through and then into a Taco Bell parking lot.  I:76-77.  The officers could see two occupants:  an adult man and a young woman.  I:63.  They could not positively identify either, however.  *Id.*

Fifteen minutes later, the officers saw the car again, this time driving north on 8th Avenue.  I:63.  The officers noted that the car's temporary tag had expired the month before.  I:63, 77.  As the car approached the intersection of 8th Ave. and 22nd Street, the light was solid red.  I:63.  The car did not stop—instead it took the right turn onto 22nd rolling at approximately 3-4 miles per hour.  I:63, 77.

**2.   The officers try to stop the car, but the driver continues driving, turns again, goes past six houses, then pulls into an exposed, double-wide driveway between two houses.**

Based on the car's failure to stop at the red light, the officers turned on their overhead lights to initiate a traffic stop.  I:64, 77.  But the driver did not stop.  Instead, he continued eastbound on 22nd, then turned left (north) on 7th Avenue.  I:64, 77.  He drove past six houses,

2

then turned right and parked in the driveway between 2110 and 2112

7th Ave.  I:64, 77.

This map shows the driver's (Vasquez's) route:



I:42.  Vasquez began at the lower-left-hand corner traveling north on

8th; made the right turn onto 22nd without stopping at the red light;

then turned left and drove north on 7th; and finally turned right into

the shared driveway between 2110 and 2112 7th Ave. (the red pin in the

upper-right section).

3

2110 7th Ave. is a single-family home separated from the street by a small lawn.  I:77.  The driveway runs west to east along the southern border of the property, and it flows seamlessly into the driveway for 2112, which runs along the northern border of that lot.  *Id.*  This undated Google Street View photo shows the driveway and the overall orientation of the two houses.  2110—where Vasquez lived—is on the left:



I:45.  As the photo shows, the driveway serves both properties, and there is no visible indicator of where the property line lies—to the

outside observer, a single, undivided, double-wide driveway serves both

properties.  As the photograph also shows, an observer standing on 7th

Ave. can look down the length of the driveway and see all the way

through the property and into the alley with no obstruction.

The officers were aware that the houses at both 2110 and 2112 7th

Ave. had been involved in recent gang shootings, and housed gang

members.  I:64.

**3.    Officers approach the car, and in the course of an
        interaction with the driver, Vasquez, find he has a gun and
        is a felon.**

The officers parked in the street and approached the parked car

on foot.  I:42.  This screenshot from the officers' body camera footage

(captured from well after the arrest of Vasquez and the discovery of the

gun) shows where Vasquez (in the blue car) was parked:



I:45.

As the officers approached, Vasquez stayed in the car and rolled down his window.  I:29, 43.  Vasquez gave the officers identification and told them the girl in the car was his daughter (she was allowed to go into the house).  I:64.  The officers knew Vasquez to be a gang member. *Id.*  They asked Vasquez to step out of the car to frisk him for weapons. *Id.*  Vasquez stayed seated and shook his head no, and the lead officer asked again.  I:77.  Despite resistance, the officers removed Vasquez from the car, forced him to the ground, and handcuffed him.  I:78.

Vasquez told the officers he had a gun in his waistband, which the officers recovered—finding it loaded.  I:65, 78.[2]

**4.    Claiming that the officers violated the curtilage of his home without a warrant, Vasquez moves to suppress the gun and ammunition, the district court denies the motion, and Vasquez pleads guilty.**

Vasquez was charged with one count of possessing a firearm and ammunition as a convicted felon in violation of 18 U.S.C. § 922(g)(1). I:9.  Vasquez moved to suppress, arguing that the driveway was part of the curtilage of his home, and thus that the Fourth Amendment required the officers to get a warrant before entering it.  I:28.  The district court denied the motion on the papers.  I:76.  The court concluded that the driveway was not part of the curtilage of 2110 7th Ave., and thus did not address the government's alternative arguments that, inter alia, Vasquez implicitly consented to the officers' entry into the driveway.  I:79-83 (order); I:49-51 (government's alternative arguments).

---

[2] Vasquez does not challenge—either below or on appeal—any aspect of the encounter other than whether the officers violated the curtilage of his home.

Reserving his right to appeal the denial of the motion to suppress, Vasquez pleaded guilty to the single count alleged in the indictment. I:89-90. The district court imposed a sentence of 58 months—the bottom end of his Guidelines range, with a nineteen-month credit for time spent in state custody on criminal conduct relevant to the offense of conviction. I:132; III:47, 50 *see also* U.S.S.G. § 5K2.23.

## SUMMARY OF ARGUMENT

The district court's denial of the motion to suppress should be affirmed on either of two independent bases:

*First*, the court correctly concluded that the exposed, shared driveway was not part of the curtilage of Vasquez's home. While the driveway (and adjacent portion of yard) was near to the home, it was not within any fence or enclosure and was in full view of the public street. Moreover, there was no evidence that Vasquez used it for anything other than parking and walking from his car to his house, that he treated it as an extension of his home, or that he used it for the private activities of life. Under the four-part test of *United States v. Dunn*, 480 U.S. 294 (1987), it was not part of the curtilage. While Vasquez asks this court to disregard *Dunn* for houses located in cities,

the cases he cites do not support that course.  The district court correctly determined that the driveway was not curtilage, and thus the officers did not need a warrant to enter it.

*Second*, even if the driveway was curtilage, Vasquez's response to the officers attempting to pull him over conveyed his implicit consent to their entering the driveway.  Rather than pull over when the officers turned on their emergency lights, Vasquez continued driving, turned left, drove past six houses, then pulled into his driveway and parked.  He then simply rolled down his window and waited for the officers to approach.  Under these circumstances, any reasonable officer would have interpreted Vasquez's actions as consent for them to enter the driveway to speak with him.  Even if the driveway was curtilage, because Vasquez manifested his objective consent, the officers did not require a warrant to enter it.

## ARGUMENT

## I.    The district court correctly concluded that the exposed driveway was not part of the curtilage of Vasquez's home.

The Fourth Amendment protects, inter alia, "houses" from "unreasonable searches and seizures," and requires that authorities obtain a warrant to enter them.  U.S. Const. amend. IV.  For Fourth

Amendment purposes, the home itself is "first among equals," and inside the home the amendment's protections are at their zenith. *Florida v. Jardines*, 569 U.S. 1, 6 (2013). But the Fourth Amendment also protects a home's curtilage, which is the area immediately outside the home that "harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." *Dunn*, 480 U.S. at 300 (quotation marks and citation omitted). The defendant bears the burden "to establish what was included in the home's curtilage." *United States v. Carloss*, 818 F.3d 988, 995 (10th Cir. 2016).

Here, the district court applied the four factors articulated in *Dunn* to conclude that the shared driveway was not a part of the curtilage of Vasquez's home, and thus that the officers did not require a warrant to enter it. Vasquez argues both that the *Dunn* factors should not have been applied, and that, under any standard, the officers invaded Vasquez's curtilage. Neither is correct: the court properly applied *Dunn* and reached the correct conclusion.

## A. Standard of review and preservation.

In reviewing a district court's order on a motion to suppress, this court accepts factual findings unless clearly erroneous and reviews the

overall determination of Fourth Amendment reasonableness—including the "[u]ltimate curtilage conclusion[]"—de novo. *See United States v. Cousins*, 455 F.3d 1116, 1121 (10th Cir. 2006).

Vasquez argued below that the driveway constituted part of his home's curtilage. I:32-37. The district court disagreed and denied the motion to suppress. I:79-83.

**B.    The district court properly used the *Dunn* factors to guide its determination of whether the driveway was part of the curtilage of Vasquez's house.**

In *Dunn*, the Supreme Court held that while the overarching curtilage question requires a court to decide "whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life," that question "should be resolved with particular reference to four factors." 480 U.S. at 300-01. Those are: "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by." *Id.* at 301.

11

*Dunn* did not establish the four factors as the end-all and be-all of curtilage analysis.  To the contrary, the court acknowledged that the factors are "useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.* at 301; *see also id.* (cautioning that the factors are not "a finely tuned formula that, when mechanically applied, yields a 'correct' answer to all extent-of-curtilage questions").

Vasquez argues that it is not appropriate to use the *Dunn* factors when the house at issue is in a city.  Op.Br. 10-13.  He claims that by not addressing *Dunn* in two more recent cases that involved urban settings—*Jardines* and *Collins v. Virginia*, 138 S.Ct. 1663 (2018)—the Supreme Court has implicitly suggested that the *Dunn* factors should be relegated to the sparsely-populated countryside.

Nothing in either *Jardines* or *Collins*, however, suggests that the *Dunn* factors are no longer to be applied in cities.  Indeed, neither case involved extensive analysis of the curtilage issue at all.  In *Jardines*, that issue occupied only a single sentence in which the court observed

12

that there was "no doubt" that the front porch was part of the curtilage. 569 U.S. at 7. And in *Collins*, the relevant area's curtilage status was resolved in two paragraphs, one of which was simply a recitation of the physical facts. 138 S.Ct. at 1670-71. That the court did not need to resort to the *Dunn* factors in either case does not suggest a holding that those factors are no longer to be applied in other, more complex cases.

Vasquez also cites a handful of circuit court cases that purportedly express ambivalence about applying *Dunn* in an urban context. First, he points to the Third Circuit's decision in *United States v. Acosta*, 965 F.2d 1248 (3d Cir. 1992), in which the court reversed a district court's holding that the backyard of an apartment building *was* part of the curtilage. Criticizing the district court's "mechanical application" of the *Dunn* factors, the court found it more significant that the landlord—not the defendant tenant—had the right to license visitors to the backyard, and so it was not part of the tenant's curtilage. *See id.* at 1256. Importantly though, and contrary to Vasquez's position here, the court noted that "the *Dunn* factors [] apply to determine extent-of-curtilage questions in urban areas." *Id.* Consequently, the Third Circuit has continued to apply the *Dunn* factors in cities. *See, e.g.*, *United States v.*

13

*Ortiz*, 483 F. App'x 712, 714-15 (3d Cir. 2012) (unpublished) (fenced lot in York, Pennsylvania).

Next, Vasquez relies on this court's decision in *United States v. Swepston*, 987 F.2d 1510 (10th Cir. 1993), *overruled on other grounds by Cousins*, 455 F.3d at 1121 n.4. *Swepston* involved a rural area. While this court took note of the rural vs. urban discussion in *Acosta*, it nevertheless found that in the case before it, the *Dunn* factors were "particularly useful in deciding the curtilage issue." 987 F.2d at 1514. The discussion of *Acosta* in *Swepston* was thus dicta. This court, too, has continued to apply the *Dunn* factors to cases involving city settings. *See, e.g.*, *United States v. Powell*, 840 F. App'x 316, 317-18 (10th Cir. 2020) (unpublished) (residence located in commercial storage facility); *United States v. McDowell*, 715 F.3d 571, 572-74 (10th Cir. 2013) (urban home); *Reeves v. Churchich*, 484 F.3d 1244, 1247, 1254-55 (10th Cir. 2007) (duplex in Salt Lake City); *Cousins*, 455 F.3d at 1119, 1121-24 (sideyard of urban home).

Finally, Vasquez relies on the Second Circuit's decision in *United States v. Alexander*, 888 F.3d 628 (2d Cir. 2018). But *Alexander* expressly rejected Vasquez's argument and held that the Supreme

14

Court's failure to cite *Dunn* in *Jardines* "does not mean that the earlier case is no longer relevant." *Id.* at 632. The *Alexander* court held, at most, that *Jardines* "undercuts certain of this Court's precedents that suggest that public visibility or public access may definitively take an area out of the curtilage." *Id. Alexander* still analyzed the curtilage issue under the *Dunn* factors. *See id.* at 633-34.

In sum, while courts must take context into account in applying the *Dunn* factors, nothing in *Jardines*, *Collins*, or any of the other circuit court cases cited by Vasquez establishes that courts should abandon the factors wholesale where the house at issue is in a city.

### C. The exposed driveway did not constitute part of the curtilage, and no warrant was thus required for officers to enter it.

Here, application of the *Dunn* factors shows that Vasquez's exposed driveway was not "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Dunn*, 480 U.S. at 301.

Both the government and the district court conceded that the first factor, proximity to the home, counted in Vasquez's favor. I:47-48, 82. But the others do not. There is no dispute that the driveway was not

15

within a fence enclosing the property (factor two), and that Vasquez had undertaken no efforts to screen the driveway from passersby (factor four). Vasquez argues that the unfenced and visible nature of the driveway should not count against him, because fences are not common in the neighborhood and only one house on the block has one. Op.Br. 15. This may point to a finding that none of the driveways on Vasquez's block (save perhaps one) are curtilage. But it does not suggest that Vasquez's driveway should be. After all, the overarching question is whether Vasquez took steps to render this area "so intimately tied to the home itself," *Dunn*, 480 U.S. at 301, that it became functionally part of the home for Fourth Amendment purposes. He didn't. That few of his neighbors did so either is of no moment. Factors two and four thus favor the government.

Factor three—"the nature of the uses to which the area is put," *Dunn* 480 U.S. at 301—also favors the government. Vasquez pointed to no evidence in the record that the driveway was used as anything other than a place to park cars—hardly an "intimate activity associated with the sanctity of a man's home." *Dunn*, 480 U.S. at 300. The photographs in the record show no items such as chairs, tables, a grill, storage, or

16

anything else that would suggest that Vasquez used this space as an adjunct of his home.

*Collins* provides a useful contrast.  There, the bit of pavement found to be curtilage was at the top of the driveway, immediately adjacent to the house, and was enclosed on three sides.  138 S.Ct. at 1670.  There was a door from the house leading directly into this space.  *Id.* at 1671.  And the enclosed portion of the driveway housed a motorcycle covered by a tarp.  *Id.* at 1668.  These facts thus suggested that Collins used the space as an area "to which the activity of home life extends."  *Id.* at 1671 (quotation omitted).

Vasquez can point to no analogous facts here.  The only "activity of home life" that Vasquez suggests on appeal took place on the driveway was walking from the car to the home.  Op.Br. 16.  But if that sufficed to establish curtilage, then every driveway and parking spot adjacent to a home would be curtilage, and the *Dunn* analysis would collapse into a single question:  how close to the home is it?  The court in *Dunn* cautioned against such a "mechanical" approach, and this court should not adopt that result.  *See* 480 U.S. at 301.

Moreover, the shared, undivided nature of the driveway also argues against the conclusion that it was part of Vasquez's curtilage. Several circuits have held that shared driveways are not curtilage. *See, e.g.*, *United States v. Stephen*, 823 F. App'x 751, 755 (11th Cir. 2020) (a duplex driveway that was "a common area used by the residents of both units solely for parking cars" was not curtilage); *United States v. Coleman*, 923 F.3d 450, 456 (6th Cir. 2019) (defendant's driveway "was in fact shared with other families and other condo residents frequently walked past cars parked in front of condo units" and thus was not curtilage); *United States v. Jones*, 893 F.3d 66, 72 (2d Cir. 2018) ("[T]he driveway in which [defendant's] vehicle was parked was the *shared* driveway of tenants in two multifamily buildings and was not within the curtilage of [defendant's] private home." (emphasis in original)).

Vasquez claims that these cases do not apply because the part of the driveway he parked on was exclusive to 2110 7th Ave. and thus was not "shared" in the sense used in those cases. Op.Br. 21-22. Vasquez concedes that the driveway was "a single slab of concrete" that straddled the southernmost strip of the 2110 lot and the northernmost portion of 2112. *Id.* at 21. But he nevertheless maintains that it is

18

"obvious from the photographs" that it is in fact a divided driveway, with one half belonging to 2110 and the other to 2112.  *Id.*

There is nothing in the photographs that suggests, "obviously" or otherwise, that the "single slab of concrete" situated between the two houses is divided into two mutually exclusive portions dedicated to their respective lots.  *See* I:45.  There is no demarcation of any kind between the two halves of the driveway, and the strongest claim that even Vasquez can muster is that it "appears likely" that the property line goes down the middle of it.  Op.Br. at 21.  Had Vasquez done some of what the defendant in *Collins* did to objectively mark his property— enclosing his portion of the driveway with a wall or a fence, for example—then the separate nature of the driveways may have become apparent to the outside observer.  But he didn't.

In *United States v. Echeverria*, 203 F. App'x 936 (10th Cir. 2006) (unpublished), this court rejected a claim that a car parked in a driveway adjacent to a house was within the curtilage of the home. Officers saw a car parked in a driveway "toward the rear of [a] home, in a driveway that looped into the backyard."  *Id.* at 937.  While the defendant argued that the car was within the curtilage, the court noted

19

that curtilage "does not include all the area that surrounds a house; it is only 'the area that harbors the intimate activity associated with the sanctity of a man's home and the privacies of life.'" *Id.* at 938 (quoting *Dunn*, 480 U.S. at 300). The court had no difficulty concluding that the curtilage "does not include an unobstructed driveway beside a house." *Id.*

This case is no different. Of the *Dunn* factors, only proximity to the home points in Vasquez's favor, and the three remaining factors point toward the government. And Vasquez can identify no evidence other than mere proximity that suggests that the portion of his driveway at issue was an area "to which the activity of home life extends." *Collins*, 138 S.Ct. at 1671. Vasquez bore the burden to point to facts demonstrating that his driveway was curtilage. *See Carloss*, 818 F.3d at 995. He failed to do so. Under any standard, then, the driveway was not a part of the curtilage of his home, and no warrant was required for the officers to enter it to conduct the traffic stop.

**D.** **Similarly, the portion of the front yard where the officers stood while interacting with Vasquez was not curtilage.**

Finally, Vasquez argues that in addition to the driveway, the portion of his front yard where the officers stood while interacting with him—and where he was eventually handcuffed—was also part of the curtilage of his home, and thus that the officers needed a warrant to enter it as well.  Op.Br. at 14.

The portion of the front yard at issue was not curtilage for substantially the same reasons as the driveway.  This court has held that even for a front yard that "is in close proximity" to a home, if "there is no evidence it (or any part thereof) is enclosed, is used for intimate activities of the home or is in any way protected from observation," then it is not curtilage.  *Reeves*, 484 F.3d at 1255.[3]

This case is no different from *Reeves*.  Vasquez's front yard was near the house, yes, but it was not within any fence and was plainly visible to all passersby on 7th Ave.  It also—like the driveway—lacked

---

[3] To be sure, the house in *Reeves* was a duplex.  But in its curtilage analysis, the court mentioned this fact only in a footnote and did not rely on it.  *See id.* at 1254-55 & n.19.

any items or anything else (furniture, children's toys, etc.) suggesting that Vasquez used it as a functional portion of his home.  Vasquez asserts that he used this part of his yard to walk from his car to his home.  But, again, if that alone sufficed to establish curtilage, the rest of the *Dunn* test would be rendered superfluous, and all routes from cars to homes would be transformed into curtilage.

Finally, Vasquez argues, relying on *Jardines*, that in some portions of his front yard, an officer could theoretically have peered into Vasquez's home, and thus that the relevant area is also curtilage. Op.Br. at 14.  But review of the body camera video shows that the officers moved directly from their car to Vasquez's car and did not come near the front window until after the gun had been found.  *See* IV:AXON_Body_2_Video_2020-05-23_0014.mp4 at 1:00-4:27.  So whether the area immediately outside Vasquez's front window was curtilage is a red herring, because there is no evidence that the officers entered that area during the relevant time period.

The district court correctly held that the officers did not invade the curtilage of Vasquez's home.

**II.    In the alternative, by leading the police to his home, parking in the exposed driveway, remaining in the car, and rolling the window down, Vasquez implicitly consented to the officers entering the driveway to conduct the stop.**

No warrant is required for a search that would otherwise violate the Fourth Amendment where the defendant consents to the officers' actions. *See Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991) ("[W]e have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.").

Consent "must be clear, but it need not be verbal." *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007). Rather, consent may "be granted through gestures or other indications of acquiescence, so long as they are sufficiently comprehensible to a reasonable officer." *Id.* at 789-90. Whether the defendant *subjectively* intended to consent is irrelevant; the dispositive question is whether a reasonable officer would have concluded that the defendant consented to the intrusion. *See United States v. Lopez-Carillo*, 536 F. App'x 762, 768 (10th Cir. 2013) (unpublished) (citing *United States v. Pena-Ponce*, 588 F.3d 579, 584 (8th Cir. 2009)). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have

23

understood by the exchange between the officer and the suspect?"

*Jimeno*, 500 U.S. at 251.

Here, Vasquez's response to the officers activating their emergency lights conveyed a message that a reasonable officer would have concluded expressed consent to the officers approaching the car where Vasquez parked. Vasquez did not pull over on 22nd Street when the officers first attempted to stop him. Instead, he continued driving, turned on 7th, drove past six houses, and finally pulled into the driveway. He did not immediately leave the car or otherwise try to evade notice, but rather rolled down the window to speak with the officers as they walked up to the car. The officers had no way of knowing that 2110 7th Ave. was his home before they started talking to him. In sum, Vasquez led the officers to the driveway and invited them to come speak to him there. Any reasonable officer would have concluded that Vasquez consented to the officers walking up to the car where he had parked and rolled down the window.

Below, Vasquez argued that finding consent here would be contrary to the Supreme Court's decision in *Lange v. California*, 141 S.Ct. 2011 (2021). *Lange* was not a consent case; rather, it involved the

24

court declining to recognize a blanket exception to the warrant requirement for pursuit of individuals suspected of misdemeanors. In *Lange*, officers tried to pull the misdemeanant over "only about a hundred feet (some four-seconds drive) from his home." *Id.* at 2016. Instead of stopping, the suspect continued to his home, then drove into the attached garage. *Id.* The defendant's conduct in *Lange* conveyed his intent to evade the police. Vasquez's conveyed the opposite. Lange's actions could not reasonably be interpreted as consent for the officers to enter the garage; Vasquez's actions, in contrast, clearly expressed consent.

If the court concludes that the driveway or yard were part of the curtilage of Vasquez's home, it should nevertheless affirm on the ground that Vasquez implicitly consented to the officers approaching his car in the place where he chose to lead them.

## CONCLUSION

The district court correctly determined that Vasquez's driveway was not part of the curtilage of his home, and that the officers did not violate the Fourth Amendment by entering it without a warrant. In the alternative, the court should determine that Vasquez implicitly

consented to the officers' entry by his conduct in response to the

attempted traffic stop.  Either way, the district court should be

affirmed.

DATED:  June 29, 2023

Respectfully submitted,

COLE FINEGAN
United States Attorney


/s/ KYLE BRENTON
KYLE BRENTON
Assistant United States Attorney

26

### CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. 32(a)(7)(B)(i), I certify that the

**ANSWER BRIEF OF THE UNITED STATES** is proportionally

spaced and contains 4,831 words, according to the Microsoft Word

software used in preparing the brief.


/s/ Kayla Keiter
KAYLA KEITER
U.S. Attorney's Office

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit, using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Kayla Keiter
KAYLA KEITER
U.S. Attorney's Office