**Case No. 22-1294**

In the United States Court of Appeals
for the Tenth Circuit

**United States of America**,
Plaintiff-Appellee,

v.

**Orlando Vasquez,**
Defendant-Appellant.

On Appeal from the United States District Court
for the District of Colorado
The Honorable William J. Martinez, District Judge
D.C. Case No. 1:20-cr-00322-WJM-1

**Appellant's Reply Brief**

Office of the Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
Tel: (303) 294-7002
Fax: (303) 294-1192
Email: Dean_Sanderford@fd.org

Virginia L. Grady
Federal Public Defender

Dean Sanderford
Assistant Federal Public Defender

Attorneys for Appellant
Orlando Vasquez

July 21, 2023

# Table of Contents

Table of Authorities ................................................................................................... ii

Argument .................................................................................................................... 1

    I.    The government's driveway arguments are beside the point. ..................... 2

    II.    The government misconstrues Mr. Vasquez's doctrinal argument and urges an improperly rigid application of the *Dunn* factors that ignores *Collins* and *Jardines*. ........................................................ 3

        A.    Mr. Vasquez's argument that some of the *Dunn* factors apply with less force in densely populated areas finds ample support in the law. ............................................................................. 3

        B.    The government's attempts to minimize the importance of *Collins* and *Jardines* are unpersuasive. .................................... 5

        C.    The government's rigid application of the *Dunn* factors cannot be squared with *Jardines* and *Collins*. .............................. 8

        D.    The government's cases are distinguishable or employ reasoning that *Collins* and *Jardines* have invalidated. ........................... 10

    III.    This Court cannot affirm on the alternative ground of consent. ............ 14

Certificate of Compliance ....................................................................................... 17

# Table of Authorities

**Cases**

*Collins v. Virginia*, 138 S. Ct. 1663 (2018) .................................................. 1, 5, 7-10, 12-14

*Florida v. Jardines*, 569 U.S. 1 (2013) ........................................................1, 5, 7, 8, 12, 13, 15

*Pullman-Standard v. Swint*, 456 U.S. 273 (1982).......................................................... 14

*Reeves v. Chruchich*, 484 F.3d 1244 (10th Cir. 2007) .....................................................11, 12

*United States v. Acosta*, 965 F.2d 1248 (3d Cir. 1992)......................................................... 4, 8

*United States v. Alexander*, 888 F.3d 628 (2d Cir. 2018) ................................................. 4, 8, 9

*United States v. Brooks*, 751 F.3d 1204 (10th Cir. 2014) ..................................................... 12

*United States v. Casados*, 26 F.4th 845 (10th Cir. 2022) ....................................................... 15

*United States v. Cousins*, 455 F.3d 1116 (10th Cir. 2006)................................................... 4, 13

*United States v. Cousins*, 455 F.3d 1116 (10th Cir. 2008)...................................................... 11

*United States v. Dunn*, 480 U.S. 294 (1987)...................................................................1, 4, 9

*United States v. Echeverria*, 203 F. App'x 936 (10th Cir. 2006) ........................................ 13

*United States v. Guerrero*, 472 F.3d 784 (10th Cir. 2007) ................................................... 15

*United States v. Guillen*, 995 F.3d 1093 (10th Cir. 2021) ................................................... 14

*United States v. McDowell*, 713 F.3d 571 (10th Cir. 2013) ................................................. 10

*United States v. Powell*, 840 F. App'x 316 (10th Cir. 2020)................................................. 11

*United States v. Sabillon-Umana*, 772 F.3d 1328 (10th Cir. 2014)....................................... 14

*United States v. Salas*, 756 F.3d 1196 (10th Cir. 2014)........................................................ 14

*United States v. Swepston*, 987 F.2d 1510 (10th Cir. 1993) .................................................. 4

*United States v. Zubia-Melendez*, 263 F.3d 1155 (10th Cir. 2001) ....................................... 14

**Argument**

As argued in the opening brief, this is an easy case under *Collins v. Virginia*, 138 S. Ct. 1663 (2018), and *Florida v. Jardines*, 569 U.S. 1 (2013). Both cases define curtilage to mean "the area immediately surrounding and associated with the home" and specifically describe the area "outside the front window" as an obvious example of curtilage. *Collins*, 138 S. Ct. at 1670-71; *Jardines*, 569 U.S. at 6-7. That's precisely the area of Mr. Vasquez's yard into which Detective Dietrick intruded. When the detective approached Mr. Vasquez and forced him from his vehicle, the detective was standing just feet from Mr. Vasquez's home and outside the front window, a clear intrusion into the home's curtilage.

The government's brief largely reads as if *Collins* and *Jardines* do not exist, and it urges this Court to rigidly apply the factors articulated in *United States v. Dunn*, 480 U.S. 294 (1987), a case involving a large, rural property very different from the densely populated neighborhood setting at issue here. But *Collins* and *Jardines* are clearly the more appropriate benchmarks in this case. *Collins* and *Jardines* are the Supreme Court's most recent pronouncements on the concept of curtilage, and unlike *Dunn*, they both involved properties similar to Mr. Vasquez's. Thus, *Collins* and *Jardines* – which easily found the areas at issue to be curtilage without reference to the *Dunn* factors, and even though some of the *Dunn* factors cut against a finding of curtilage – control this case.

The government's brief also obfuscates the issue on appeal by focusing on Mr. Vasquez's driveway and by mischaracterizing Mr. Vasquez's doctrinal arguments in an apparent attempt to portray them as lacking legal support. This Court should not be misled by the government's excessive focus on the driveway; Mr. Vasquez principally challenges Detective Dietrick's entry onto his yard, which independently establishes a Fourth Amendment violation. And properly understood, Mr. Vasquez's legal arguments find ample support in the law. Finally, this Court should reject the government's request for affirmance on alternative grounds.

## I.   The government's driveway arguments are beside the point.

The government's curtilage argument focuses almost exclusively on whether Mr. Vasquez's *driveway* fell within the curtilage of his home. That is how the government frames its issue statement (at 1), it is the primary subject of the government's summary of argument (at 8), and it makes up the lion's share of the government's merits argument as well (at 15-20). But Mr. Vasquez's principal claim on appeal is that the area of the *yard* into which the detective intruded was curtilage. He argued in his opening brief that the driveway was also curtilage only in the alternative and to explain the errors committed by the district court (which, like the government, wrongly focused on the driveway).

The government does not dispute that Detective Dietrick entered Mr. Vasquez's yard. Nor does it dispute that, if the area of the yard into which the detective intruded was curtilage, then the detective's trespass independently suffices to

2

establish a Fourth Amendment violation. That is for good reason: as explained in the opening brief (at 18), it was from the detective's position in the yard that he seized Mr. Vasquez by forcibly removing him from his vehicle. Thus, whether the driveway was also curtilage is not important, and this Court should treat the government's inordinate focus on the driveway as the sideshow that it is.

## II. The government misconstrues Mr. Vasquez's doctrinal argument and urges an improperly rigid application of the *Dunn* factors that ignores *Collins* and *Jardines*.

On the merits, the government paints Mr. Vasquez's position as out of step with existing precedent and advances a strict application of the *Dunn* factors that ignores the importance of *Collins* and *Jardines*. This Court should reject the government's arguments.

### A. Mr. Vasquez's argument that some of the *Dunn* factors apply with less force in densely populated areas finds ample support in the law.

In the government's telling, Mr. Vasquez is asking this Court to "disregard" the *Dunn* factors and "abandon [them] wholesale" in urban settings like this one, an approach the case law universally rejects. Gov't Br. at 8-9, 13-15. But Mr. Vasquez's position has never been so absolute. Instead, he has claimed that some of the *Dunn* factors are "less useful" and "of limited significance" in a neighborhood setting. Op. Br. at 10, 12. And as the opening brief explains (at 9-13), Mr. Vasquez's position finds substantial support in the case law.

3

*Dunn* itself cautioned against "mechanical application" of the factors and explained that they are "useful analytical tools only to the degree, in any given case, that they bear upon whether" the area at issue is "intimately tied to home." *Dunn*, 480 U.S. at 301. Even before *Jardines* and *Collins*, the Third Circuit observed that some of the *Dunn* factors "may be less determinative in a city setting" because, in a densely populated area, it may be "impossible, or at least highly impracticable, to screen one's home and yard from view." *United States v. Acosta*, 965 F.2d 1248, 1256 (3d Cir. 1992). Also before *Jardines* and *Collins*, this Court acknowledged that the *Dunn* factors may be less helpful in urban settings and were "particularly useful" in delineating the curtilage of rural properties. *United States v. Swepston*, 987 F.2d 1510, 1514 (10th Cir. 1993), *overruled on other grounds by United States v. Cousins*, 455 F.3d 1116, 1121 (10th Cir. 2006). And after *Jardines*, the Second Circuit recognized the limited significance, in a neighborhood setting, of the *Dunn* factors concerning the presence of an enclosure and the extent to which the area is closed off from public view. *United States v. Alexander*, 888 F.3d 628, 632-33 (2d Cir. 2018). While these cases, as the government points out (at 13-15), do not completely jettison the *Dunn* factors, they squarely support Mr. Vasquez's position that some of the factors are less important in an urban setting than they were in examining the large, rural property at issue in *Dunn*.

But it is not just circuit decisions that reinforce Mr. Vasquez's argument; *Jardines* and *Collins* do as well. *Jardines* held that the defendant's front porch was curtilage without citing the *Dunn* factors and without discussing whether the porch

4

was enclosed, whether it was publicly visible, or whether the defendant had taken steps to shield it from public view. Rather, defining curtilage to mean "the area immediately surrounding and associated with the home," the Court easily found that the porch was a "classic exemplar of an area adjacent to the home and to which the activity of home life extends." 569 U.S. at 6-7. Similarly, in *Collins*, the Court found the defendant's partial driveway enclosure to be curtilage without citing the *Dunn* factors and even though the area was open to observation from the street. 138 S. Ct. at 1668, 167-71. Indeed, *Collins* expressly rejected the state's argument that the area was not curtilage because it was open to public view, holding that "a parking patio or carport into which an officer can see from the street is no less entitled to protection from trespass and a warrantless search than a fully enclosed garage." *Id.* at 1675.

> B. **The government's attempts to minimize the importance of *Collins* and *Jardines* are unpersuasive.**

*Jardines* and *Collins* are the Supreme Court's most recent curtilage cases and are the most relevant here because both of them, like this case, involve residential properties in relatively dense neighborhoods. But the government has very little to say about them, and what it does say is unpersuasive. According to the government (at 12), *Jardines* and *Collins* do not bear on the relevance of the *Dunn* factors in an urban setting because their curtilage discussions were not "extensive." In the government's view (at 13), the Court simply had no need to "resort to the *Dunn* factors" because the

5

cases were easy, leaving the *Dunn* factors to be applied in full force in more "complex cases."

This argument fails for several reasons. First, it is entirely speculative; in neither case did the Court suggest that the *Dunn* factors should come and go depending on the simplicity of the case. But more importantly, the government's interpretation makes no sense as an explanation of the Court's analysis in *Collins* and *Jardines*. The government's position might be tenable if *Collins* and *Jardines* had been easy in the sense that all of the *Dunn* factors clearly pointed to a finding of curtilage. In that situation, it might be reasonable to infer that the Court believed the factors strictly applied but saw no need to march through them. But as explained above, in both *Jardines* and *Collins*, some of the *Dunn* factors – whether an enclosure surrounded the area and whether the area was visible to passersby – cut against a finding of curtilage. And *Collins* expressly rejected the notion that the visibility of the area from the street weighed against a finding of curtilage. The Court would not – in fact, could not – have reached this conclusion had it believed the *Dunn* factors applied as strictly as the government suggests. At the very least, had the Court viewed the factors to be the lodestar the government thinks they are, it would have discussed them and explained why it reached its conclusion in the face of factors that pointed toward a different outcome.

In any event, the government's argument fails on its own terms. Even if the *Dunn* factors fully come into play only to decide "complex" cases, not easy cases like

*Jardines* and *Collins*, the government never explains why it thinks *this* case is complex. It's not. In fact, it's just as easy as *Jardines* and *Collins* were. As already noted, *Jardines* and *Collins* define curtilage to mean "the area immediately surrounding and associated with the home" and label the area "outside the front window" as a clear example of a home's curtilage *Collins*, 138 S. Ct. at 1670-71; *Jardines*, 569 U.S. at 6-7. The Court's descriptions of curtilage map perfectly onto this case; Detective Dietrick was standing in the yard, just feet from the house and outside the front window, when he removed Mr. Vasquez from his car.

The government claims (at 22) that Detective Dietrick did not move near the window until after the gun was found, but the body cam footage and the photograph reproduced at page 3 of the opening brief speak for themselves. Although the detective may have moved slightly closer to the window after the gun was recovered, he was clearly just feet from the front window of Mr. Vasquez's home when he approached Mr. Vasquez's vehicle and took Mr. Vasquez to the ground. Op. Br. at 3; Gov't Exh. 2. at 1:15–3:30.[1] Under *Collins* and *Jardines*, the detective was clearly standing in the curtilage of Mr. Vasquez's home.

---

[1] Undersigned counsel said in the opening brief (at 4 n.2) that he would move to supplement the record with Government Exhibit 2. He has since realized, however, that Volume 4 of the record, which consists of conventionally filed materials, already contains the exhibit.

### C. The government's rigid application of the *Dunn* factors cannot be squared with *Jardines* and *Collins*.

This Court should reject the government's mechanical application of the *Dunn* factors because it essentially ignores the existence of *Collins* and *Jardines*.

First, the government points out (at 21) that Mr. Vasquez's yard was not fenced in and was visible to passersby. But as the Second and Third Circuits have explained, the *Dunn* factors concerning the existence of an enclosure and visibility to the public are not as useful in a densely populated area because in that setting it may be "impossible, or at least highly impracticable, to screen one's home and yard from view," *Acosta*, 965 F.2d at 1256, and because "it is not necessary to turn a residential property into a fortress" to earn the property Fourth Amendment protection, *Alexander*, 888 F.3d at 635.

*Jardines* and *Collins* are in accord. There was no evidence in *Jardines* that the front porch was enclosed or that it was otherwise shielded from view. 569 U.S. at 6-7. And the driveway area in *Collins* was visible from the street and was only partially enclosed, on one side by the house's exterior wall, and on two sides by a wall the height of a car, which nearly any adult could easily see over. 138 S. Ct. at 1668, 1670-71. Moreover, as already discussed, *Collins* rejected the notion that visibility to the public deprived the area of constitutional protection. *Id.* at 1675.

Even *Dunn* doesn't meaningfully support the government's enclosure argument. In *Dunn*, the enclosure at issue was a fence that cordoned off the yard of

8

the residence from the rest of the defendant's ranch, thus demarking the sub-parcel of land "that is readily identifiable as part and parcel of the house." 480 U.S. at 302. In other words, the enclosure was relevant only insofar as it defined the boundaries of the home's yard within the larger 198-acre ranch owned by the defendant. As *Alexander* explains, because this factor "seeks to account for the divisions that a property owner herself has created with her property," it is "a less useful concept" where, as here, the property is a small neighborhood lot. 888 F.3d at 633.

The government also contends (at 21-22) that the *Dunn* factor related to the defendant's use of the property cuts against a finding of curtilage because there were no lawn chairs or children's toys in the yard. But the government cites no authority to support the notion that a yard becomes curtilage only if it contains personal items confirming that the occupants use the yard for domestic purposes. And in fact, the cases suggest the opposite. Contrary to what the government says (at 17), there was no evidence that the defendant in *Collins* used his partial driveway enclosure for anything other than parking his motorcycle, 138 S. Ct. at 1668, which according to the government (at 16), is not an activity sufficiently connected to home life to support a finding of curtilage. And there was no evidence that the porch in *Jardines* featured accoutrements such as chairs or a swing.

Instead of requiring outward displays of domestic usage, the Supreme Court has directed courts to decide curtilage questions by reference to "our daily experience." *Collins*, 138 S. Ct. at 1670-71. And as the opening brief explains (at 16), it

is commonly (maybe universally) understood that home life typically extends to the front yard. The fact that Mr. Vasquez did not have lawn chairs or toys in his yard does not detract from this fact, particularly because the seizure occurred during the middle of the night. Many city dwellers refrain from leaving personal property in their front yard, particularly overnight, for fear of theft. The cases do not support the government's claim that a yard without lawn furniture or toys does not count as curtilage.

> **D.    The government's cases are distinguishable or employ reasoning that *Collins* and *Jardines* have invalidated.**

In its brief, the government relies upon (at 14, 19-21) five of this Court's decisions, three of which predate *Collins* and *Jardines*. None of the government's cases meaningfully supports its position.

The only published post-*Jardines* decision that the government cites did not decide a curtilage question at all, holding only that, "whether or not" the driveway and walkway the officer traversed was curtilage, the officer did not violate the Fourth Amendment because his purpose was to conduct a "knock and talk." *United States v. McDowell*, 713 F.3d 571, 574 (10th Cir. 2013). This case obviously doesn't help the government because, as explained in the opening brief (at 21), Detective Dietrick did not enter Mr. Vasquez's property to "knock and talk" but to ticket him for traffic infractions, arrest him, or both. The government does not contend otherwise.

The government's only other post-*Jardines* case is unpublished, distinguishable, and otherwise unpersuasive. In that case, the defendant lived in a trailer on a lot that was the business location for a storage facility, and he claimed that the officers intruded on the curtilage by walking along a walkway to the north of the residence that was used in connection with the storage business. *United States v. Powell*, 840 F. App'x 316, 317-18 (10th Cir. 2020). This Court held that the walkway was not curtilage in large part because the walkway was used for commercial purposes, abutted the publicly accessible storage facility, and was itself being used for storage. *Id.* at 319. Nothing of the kind is true of Mr. Vasquez's yard. Moreover, although *Powell* applies the *Dunn* factors in a fairly mechanical fashion, its analysis in this regard is not persuasive and should not be followed. *Powell* does not discuss in any way the impact of *Collins* and *Jardines*, citing *Jardines* only for the uncontroversial proposition that the curtilage "is part of the home for Fourth Amendment purposes." *Id.* at 318.

The government's remaining three cases predate *Jardines* and *Collins*. Two of them – *Reeves v. Chruchich*, 484 F.3d 1244 (10th Cir. 2007), and *United States v. Cousins*, 455 F.3d 1116 (10th Cir. 2008) – are published, but both cases employ reasoning that is no longer valid after *Jardines* and *Collins*. For this reason, they are not binding on the panel that decides this case. Although a panel typically "cannot overturn the decision of another panel," this rule does not apply "when the Supreme Court issues an intervening decision that is contrary to or invalidates [this Court's] previous analysis."

11

*United States v. Brooks*, 751 F.3d 1204, 1209 (10th Cir. 2014). *Collins* and *Jardines* clearly invalidate the analysis employed in *Reeves* and *Cousins*.

In *Reeves*, this Court held that the area of the yard outside the plaintiff's bedroom window was not curtilage, 484 F.3d at 1254-55, but its analysis did not survive *Collins* and *Jardines*. As noted, *Collins* and *Jardines* describe the area outside the front window to clearly fall within a home's curtilage. And given that both cases define curtilage to mean "the area immediately surrounding and associated with the home," *Collins*, 138 S. Ct. 1670-71; *Jardines*, 569 U.S. at 7, there is no reason to think the Supreme Court would see a material difference between the front window and a bedroom window, particularly since the area outside the front window is constitutionally protected to prevent police officers from observing a person's "repose" inside her home. *Jardines*, 569 U.S. at 6. Moreover, *Reeves*'s analysis hews closely to the *Dunn* factors and relies in large part on the fact that the yard was not "enclosed" or "in any way protected from observation." 484 F.3d at 1255. As already discussed, *Collins* and *Jardines* eschewed reliance on the *Dunn* factors and found areas in close proximity to the house to be curtilage even though the areas were visible from the street and not fully enclosed.

*Collins* and *Jardines* invalidate the reasoning of *Cousins* for similar reasons. *Cousins* held that a partially enclosed sideyard that contained a small melon garden and the home's electric meter fell outside the curtilage of the home. 455 F.3d at 1122-24. This holding clearly conflicts with *Collins* and *Jardines*, which list a "side garden" among

12

clear examples of curtilage. *Collins*, 138 S. Ct. at 1671; *Jardines*, 569 U.S. at 6. In addition, *Cousins* found that *Dunn*'s enclosure factor weighed against a finding of curtilage because the unenclosed side of the yard was "the expected path one would take to get to the sideyard, and it [wa]s a paved pathway." 455 F.3d at 1122. But the same was true in *Collins*: the partial driveway enclosure was open to the road and visible from the street. 138 S. Ct. at 1688. *Cousins* also found that the nature of the defendant's use of the area weighed against a finding of curtilage because, though it contained a garden, "the presence of the electric meter and paved walkway belie[d] any claim that the sideyard was intended as a private space." 455 F.3d at 1123. This analysis contradicts both *Jardines* and *Collins*. The front porch in *Jardines* was clearly not a private space because, as the Court noted, visitors were free to walk onto the porch to knock on the door. 569 U.S. at 8. And the driveway enclosure in *Collins* was obviously not private because it was visible from the street. 138 S. Ct. at 1688.

The government's final case is *United States v. Echeverria*, 203 F. App'x 936, 938 (10th Cir. 2006), which is unpublished and therefore not precedential. In any event, it is distinguishable and, as with *Reeves* and *Cousins*, its analysis cannot withstand scrutiny after *Collins* and *Jardines*. *Echeverria* summarily concluded that "an unobstructed driveway beside a house" is not curtilage. Mr. Vasquez, of course, is principally challenging Detective Dietrick's entry into his yard, not the entry onto his driveway, so for that reason alone *Echeverria* is inapposite. But *Echeverria*'s sweeping pronouncement that "unobstructed driveway[s]" are not curtilage cannot be squared

13

with *Collins*, which held that part of the defendant's driveway was curtilage even though it was visible to passersby. 138 S. Ct. at 1668, 1670.

For these reasons, the government's cases do not undermine Mr. Vasquez's claim that, under *Collins* and *Jardines*, the area of his yard into which Detective Dietrick intruded fell within the curtilage of his home.

### III.   This Court cannot affirm on the alternative ground of consent.

As a fallback position, the government argues (at 23-25) that Mr. Vasquez consented to Detective Dietrick's entry onto his property by pulling into the driveway and rolling down his window. Because the district court did not deny the motion to suppress on this basis, the government is asking this Court to affirm on alternative grounds. This argument fails for two independent reasons.

First, the government is improperly asking this Court to "become the fact-finder." *United States v. Sabillon-Umana*, 772 F.3d 1328, 1332 (10th Cir. 2014). It is well established that consent is "a question of fact." *United States v. Salas*, 756 F.3d 1196, 1203 (10th Cir. 2014); *see also United States v. Guillen*, 995 F.3d 1093, 1103 (10th Cir. 2021) ("Whether officers obtained valid consent to enter a home is a question of fact."); *United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001) ("Whether voluntary consent was given is a question of fact."). And as an appellate tribunal, this Court does not find facts. *See Pullman-Standard v. Swint*, 456 U.S. 273, 291-92 (1982) ("Factfinding is the basis responsibility of district courts, rather than appellate courts."); *see also United States v. Casados*, 26 F.4th 845, 853 (10th Cir. 2022) (holding

14

that this Court can affirm on alternative grounds only when "there is a record sufficient to permit conclusions of law").

Second, and in any event, the record would not support a finding of consent. The standard for consent is demanding. For consent to be valid, "two conditions must be met: (1) There must be clear and positive testimony that consent was unequivocal and specific and freely given; and (2) The government must prove consent was given without duress or coercion, express or implied." *United States v. Guerrero*, 472 F.3d 784, 789-90 (10th Cir. 2007). This standard is clearly not met here.

To start, Mr. Vasquez did not unequivocally communicate his consent to Detective Dietrick's entry onto his property simply by waiting to stop his vehicle until he arrived home. In fact, his conduct was decidedly ambiguous – it is just as likely (if not more so) that he was trying to evade the detective by "retreat[ing] into his home" where he could be free from "unreasonable government intrusion." *Jardines*, 569 U.S. at 1. The fact that he rolled down his window when the detective approached his vehicle adds nothing to the government's argument because, again, it is subject to various interpretations and therefore did not unequivocally communicate consent. A person might roll down their window when an officer approaches for all kinds of reasons – to better assess what is likely to be a tense situation, to avoid coming off as defiant, or simply to speak to the approaching officer. The record therefore does not unequivocally demonstrate that Mr. Vasquez consented to the detective entry into his yard.

15

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


By: /s/ *Dean Sanderford*
    Dean Sanderford
    Assistant Federal Public Defender
    633 17th Street, Suite 1000
    Denver, Colorado 80202
    (303) 294-7002
    Email: Dean_Sanderford@fd.org

## Certificate of Compliance

As required by Fed. R. App. P. 32(g)(1), I certify that this brief is proportionally spaced and contains 4,011 words. I relied on my word processor to obtain the count, and the information is true and correct to the best of my knowledge.

/s/ Dean Sanderford
Dean Sanderford
Assistant Federal Public Defender